## Case No. 13,761.

### TATHAM v. LE ROY.

Circuit Court, S. D. New York. 1849.

PATENTS—ALIEN PATENTEE—COMBINATIONS—IN- FRINGEMENT—WHO ARE INFRINGERS— NEW AND USEFUL RESULT.

## Case No. 13,762.

### TATHAM et al. v. LE ROY et al.

[7 West. Law J. 431.]

Circuit Court, S. D. New York. 1850.

PATENTS — WHAT CONSTITUTES INFRINGEMENT — LEAD-PIPE MACHINE.

[1. Even if an alleged infringing machine is not, in its arrangement, substantially different from that of the patent, yet there is no infringement if its action upon the material operated on is essentially different, and the result is new; otherwise if there are merely formal changes, without any new mode of action or the accomplishment of a new result.]

[2. The Tatham patent, No. 1,980, for a lead-pipe machine, analyzed and construed in a charge to a jury.]

[This was a bill in equity by George N. Tatham, Benjamin Tatham, Jr., and Henry B. Tatham against Thomas Le Roy, Robert Lowber, and David Smith, for a provisional injunction to restrain the infringement of letters patent No. 1,980, granted to Benjamin Tatham, Jr., and H. B. Tatham, as assignees of John and Charles Hanson (who had procured an English patent), and reissued to all the complainants March 14, 1846, for improvements in the machines for making or manufacturing lead pipes and tubes. The court held that the acts of congress (5 Stat. 193, and Id. 123) regulating foreign patents did not apply to American patentees. Case No. 13,764.

[Before the cause was again before the court, Lowber, one of the defendants, was stricken out as a party.

[A suit at law was then begun to recover damages for the infringement. There were two trials. At the first the verdict rendered by the jury was in favor of the plaintiffs (case unreported). This the court set aside, and awarded a new trial, upon which the case is now before the court.]

Cutting, Staples & Goddard, for plaintiffs.

Stoughton, Noyes & Harrington, for defendants.

This is an action for infringement of a patent granted to the plaintiffs, October 11, 1841, for improvements in lead-pipe machinery. The defendants are using a machine under the patent granted to Samuel G. Cornell, August 21, 1847. The plaintiffs alleged that Cornell's improvements, for which the patent was granted to him, consist of transpositions of the parts of their machine, and were not substantially different from those described in their patent. The defendants contend that their machine is not only substantially different from that of the plaintiffs, but possesses very great advantages over all lead-pipe machines heretofore known. It appeared in evidence that the defendants, by employing one-half of the pressure necessary to work the other machines, could make three times the quantity of lead pipe that could be made by any other method.

The trial occupied the court and jury five days, and Judge NELSON, in charging the jury, after giving a very clear and succinct history of the former methods of manufacturing lead pipe, and of the various improvements that had been made in the machinery used for that purpose, charged, that both the patent granted to the plaintiffs and that granted to Mr. Cornell were for improvements upon the machine invented by Thomas Burr in 1820; that, in Burr's machine the die was placed in the end of the lead cylinder, opposite to that at which the piston entered; and the core being fastened in the end of the piston, and advancing before it through the lead in the cylinder, was bent and twisted out of its central position in relation to the die, by reason of the great pressure required to force the whole mass of lead through the cylinder and out through the die; that this difficulty was found to be so great in practice, that the use of that arrangement had been abandoned; that the object of the plaintiffs' improvement was to remedy this defect, and they attempted to do so by using a long coreholder of sufficient size and strength to withstand the unequal pressure and friction, into the end of which was fastened a short core of the size required to form the inner diameter of the pipe. This coreholder is fastened to a strong framework below the platform on which the piston rests, extending through the platform, through the center of the piston, which is bored accurately throughout for that purpose, and through the center of the lead cylinder to its discharging end; and the short core is there inserted in the center of the die. This coreholder is always held stationary with relation to the die, so that, when the piston advances, it slides over the coreholder, forces the whole mass of lead forward in the cylinder and out at the die, in the same manner as in Burr's machine. The coreholder being of large size, firmly secured to the framework, and supported by the piston which slides over it, would not be bent or twisted out of its proper position; and thus it was thought the defects of Burr's machine were overcome.

This was the plaintiffs' invention; and it was necessary for the jury to consider whether the invention of Mr. Cornell, which the defendants used, was substantially the same, or a different improvement. That Mr. Cornell had the same object in view in his improvements that the plaintiffs had, viz., to overcome the difficulties of Burr's machine. To do this, he takes the long, slender core of Burr, and fixes it firmly in the bottom of the lead cylinder, and then places the die in the end of the piston, which is made hollow for the purpose of permitting the pipe to escape through it; so that, as the piston is forced into the cylinder, or the cylinder is forced over the piston, the pipe is formed at the point of pressure where the piston comes in contact with the lead, and passes out through the hollow piston. Mr. Cornell claims that there are very material advantages in his improvement. In the first place, it is alleged that the core is fixed in the bottom of the lead cylinder, and extending upward through it to the die; so that, when the lead in the cylinder becomes set, or solid, it forms a support for the core up to the very point where the pipe is formed during the whole operation. In the next place, as the pipe is formed at the point of pressure, without moving forward the whole mass of lead in the cylinder,—as must be done in all other machines, —Mr. Cornell alleges that a very great amount of friction is avoided, and that the action of the machinery upon the lead, in the operation of making pipe, is entirely different from any other method. The defendants, therefore, insist: (1) That these arrangements of machinery are new, and substantially different from the plaintiffs' machine. (2) That even if these arrangements of machinery are not, in themselves, substantially different from those of the plaintiffs, yet, as the result, the action upon the lead is essentially different. This, if so, makes the improvement novel and patentable. That, if the jury believed that the changes made in the machine by Mr. Cornell were slight and formal, such as are contained in, or readily suggested by, the plaintiffs' specification and drawings, and that no new result in the action of the machinery upon the lead is produced, they were to find a verdict for the plaintiffs. But, if they believed that the arrangements of Mr. Cornell were substantially different from those of the plaintiffs, or that, by means of different arrangements, though not in themselves wholly unlike the plaintiffs', a new and useful result in the mode of operation of the machine is produced, which was not known to the plaintiffs, and not found in any other machine, then Mr. Cornell was entitled to his patent; and the defendants, in using his machine, had not infringed the plaintiffs' patent.

His honor then illustrated, by a variety of adjudged cases, what was necessary to constitute novelty in machinery according to the rules of law, and instructed the jury to apply those principles of law to the question of fact in the present case, and find their verdict accordingly. His honor adverted to the very great importance of the case, as well on account of the large interests of the parties which depended upon their verdict, as of the interesting character of the points in controversy.

After two hours absence, the jury returned to the bar, and found a verdict in favor of the defendants.

[NOTE. The verdict rendered above was set aside by the court, and a new trial granted (case unreported). Upon the new trial (May, 1849) there was a verdict for plaintiff for $11,394 damages (case unreported). Judgment on this

verdict was reversed in error by the supreme court, and a new trial ordered. 14 How. (55 U. S.) 156. Case No. 13,760 would seem to be the new trial were it not that it appears to have been tried in November, 1852, while the case in the supreme court was heard at the December term, 1852; and further in the hearing in the chancery case, in 22 How. (63 U. S.) 132, it is stated that by stipulation the action at law was not to be tried again. For an action by the same plaintiffs against other defendants in Massachusetts, see Case No. 13,763. For the chancery cases related to this proceeding, and pending at the same time, see Cases Nos. 13,764 and 13,765.]